UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CANDICE ROSSI CHEOLAS and
STEVE CHEOLAS,

        Plaintiffs,                              Case No. 06-11885

v.                                         Hon. Gerald E. Rosen

CITY OF HARPER WOODS, *et al.,*

        Defendants.

_____/

**OPINION AND ORDER REGARDING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT ON PLAINTIFFS' CLAIMS AGAINST
<u>HARPER WOODS CITY ATTORNEYS LABARGE AND DEWAELE</u>**

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on    <u>February 13, 2009</u>

PRESENT:  Honorable Gerald E. Rosen
                    Chief Judge, United States District Court

## I.  <u>INTRODUCTION</u>

Plaintiffs Candice Rossi Cheolas and Steve Cheolas commenced this case in this

Court on April 21, 2006, asserting a variety of federal and state-law claims against the

Defendant City of Harper Woods and a number of its employees and agents.  Plaintiffs'

claims arise principally from the events surrounding an April 24, 2004 birthday party at

their home for their 15-year-old daughter, which erupted into controversy when the

Harper Woods police entered the home on suspicion of underage drinking.  Following

this incident, Plaintiffs were charged with misdemeanor violations of Harper Woods ordinances and state law, but the charges against Steve Cheolas were dismissed and Candice Rossi Cheolas was acquitted of all charges.  Despite these acquittals, Mrs. Cheolas was terminated from her job with the City of Harper Woods.  Most of Plaintiffs' claims in this case arise from the raid of their home and their subsequent criminal prosecution, and the remaining claims arise from the termination of Mrs. Cheolas's employment with the Defendant City.

Through the present motion, filed before the conclusion of the discovery period, two of the Defendants, attorneys Russell LaBarge and Sharon DeWaele, seek the dismissal of the claims asserted against them.  At all relevant times, these attorneys and their firm, Johnson Rosati LaBarge Aseltype & Field, P.C., acted as the city attorney for Defendant Harper Woods,[1] and Defendants LaBarge and DeWaele were involved in Plaintiffs' criminal prosecutions.  In support of their motion, these two Defendants argue that Plaintiffs' claims against them are barred by absolute prosecutorial immunity or, alternatively, that they are entitled to qualified immunity.  In response, Plaintiffs contend that further discovery is necessary in order to properly assess Defendants' appeals to absolute and qualified immunity.[2]

---

[1]The law firm initially was named as a party to this suit, but was voluntarily dismissed in a stipulated order entered on September 8, 2006.

[2]In addition to this response, Plaintiffs have separately moved for a continuance under Fed. R. Civ. P. 56(f), requesting that they be given the opportunity to depose Defendants LaBarge and DeWaele before the Court rules on Defendants' motion.  For their part, Defendants LaBarge and DeWaele have objected to a ruling by Magistrate Judge Pepe allowing Plaintiffs to

Having reviewed the parties' briefs in support of and opposition to Defendants' motion, as well as the record as a whole, the Court finds that the relevant allegations, facts, and legal arguments are adequately presented in these written submissions, and that oral argument would not aid the decisional process. Accordingly, the Court will decide Defendants' motion "on the briefs." *See* Local Rule 7.1(e)(2), U.S. District Court, Eastern District of Michigan. This opinion and order sets forth the Court's rulings on this motion.

## II.  <u>FACTUAL BACKGROUND</u>

While Plaintiffs' complaint spans 67 pages and includes 310 numbered paragraphs, only a small fraction of the complaint's allegations are relevant for present purposes. As noted, the claims in this case arise primarily from an April 24, 2004 birthday party at the home of Plaintiffs Candice Rossi Cheolas and Steve Cheolas for their 15-year-old daughter, Alexandra. At the time of this party, Mrs. Cheolas was employed by the Defendant City of Harper Woods as the director of parks and recreation, the community center, and public relations, and she had worked for the City since 1969.

Among the guests at the April 24, 2004 party was Phelicia VanOverbeke, the daughter of Defendants Lawrence and Kelli VanOverbeke. At some point during the evening, Mrs. Cheolas discovered that Phelicia appeared to be ill, evidently from drinking, and Mrs. VanOverbeke arrived at Plaintiffs' home shortly thereafter to check on

---

depose them.

3

her daughter.  Upon observing Phelicia, Mrs. VanOverbeke asked her daughter, "[W]ho did this to you?", and she further stated that "if my daughter gets into trouble, you are all getting into trouble."  (Complaint at ¶¶ 51-52.)  She then left the home to speak to her husband who was waiting outside, and instructed him to call the police.

Upon learning that the police had been called, Mr. Cheolas gathered together the children at his daughter's party and asked whether they had been drinking.  He was told that there had been no drinking or alcohol at the party, and that Phelicia VanOverbeke had been drinking elsewhere.  Plaintiffs further allege that they, their college-age son, and another parent had gone down into the basement where the party was being held at various points in the evening, and had not witnessed or been told about any drinking at the party.

When the Harper Woods police arrived at Plaintiffs' home, they sought to enter the residence and check on Phelicia VanOverbeke, citing information they had been given that the girl was unconscious.  The police were met at the door by Mrs. Cheolas, who assured them that she had been home all night and that Phelicia was not unconscious.  Although Mrs. Cheolas asked the police to wait outside while she checked with her husband, who is an attorney, they pulled the door open, proceeded to the basement where the party was being held, and evidently administered breathalyzer tests to one or more children at the party.  In addition, emergency medical service ("EMS") personnel entered the home, checked on the condition of Phelicia VanOverbeke, and evidently determined that no treatment was necessary.  The EMS personnel and the police then left Plaintiffs'

4

home, without arresting either Plaintiff or indicating that they would be charged with any crime.

Following an investigation, however, Plaintiffs were charged on May 18, 2004 with misdemeanor violations of Harper Woods ordinances and state law, including permitting minor children to be present at a gathering where alcoholic beverages are served and contributing to the delinquency of a minor. Mrs. Cheolas also was charged with resisting and obstructing a police officer. According to the complaint, the investigation that led to these charges suffered from a variety of flaws, including (i) revisions to police reports in order to omit exculpatory evidence, (ii) disregard of witness statements that tended to support Plaintiffs' claim that they were unaware of any underage drinking at their home, and (iii) inconsistent, false, or fabricated accounts by the police officers and paramedics who were dispatched to Plaintiffs' home on the night of their daughter's birthday party.

The charges against Plaintiffs evidently were brought and prosecuted by Defendant Russell LaBarge of the law firm of Johnson Rosati LaBarge Aseltype & Field, P.C., who served at the time as the city attorney for the City of Harper Woods. Another attorney at the firm, Defendant Sharon DeWaele, evidently assisted in this prosecution, although the complaint does not specify her precise role. Plaintiffs allege that these Defendants continued to prosecute them despite the absence of probable cause or sufficient evidence to support the charges against them. They further allege that Defendants LaBarge and DeWaele persistently proposed and pursued plea bargains calling for Mrs. Cheolas to

resign from her job with the City, but Plaintiffs rejected these offers.

On August 26, 2004, the charges against Mr. Cheolas were dismissed without prejudice. On May 9, 2005, a state district court judge granted Mrs. Cheolas's motion to dismiss the charges against her, stating on the record that the resisting and obstructing charge was ridiculous. On appeal, a state circuit court judge reinstated the charges and remanded the matter for trial. Following a two-day trial on January 9 and 10, 2006, the district court judge granted Mrs. Cheolas's motion for a directed verdict, and she was acquitted of all charges. During the course of these proceedings, however, Mrs. Cheolas's employment with the City of Harper Woods was terminated on July 18, 2005.

Plaintiffs then brought the present suit on April 21, 2006, naming as Defendants (i) the City of Harper Woods and its police department, (ii) several Harper Woods police officers and paramedics, (iii) the Harper Woods city manager, James E. Leidlein, (iv) Lawrence and Kelli VanOverbeke, and (v) attorneys Russell LaBarge and Sharon DeWaele, as well as their law firm.[3] Defendants LaBarge and DeWaele are named in ten counts of the 22-count complaint:

> (i) Count II, asserting substantive due process violations under the Fourteenth Amendment to the U.S. Constitution arising from Defendants' alleged fabrication of evidence, false statements at trial, and initiation and continuation of a criminal prosecution despite a lack of probable cause or supporting evidence, (Complaint at ¶ 146);

> (ii) Count III, asserting due process violations under the state and federal constitutions arising from the criminal prosecution of Mr. and Mrs.

---

[3]As noted earlier, the law firm has been dismissed as a party.

6

Cheolas by Defendants LaBarge and DeWaele despite the absence of
sufficient evidence to support any such criminal charges, (Complaint at ¶
158);

(iii)  Count IV, alleging a conspiracy among most of the Defendants
to violate Plaintiffs' federal constitutional rights to substantive and
procedural due process by unlawfully entering their home, fabricating
evidence, initiating and continuing a criminal prosecution against them,
engaging in bad-faith plea negotiations, and terminating Mrs. Cheolas's
employment with the Defendant City, (Complaint at ¶¶ 167-70);

(iv)  Count VI, asserting violations of Plaintiffs' federal
constitutional rights to due process and a fair trial arising from the criminal
prosecution of Plaintiffs without probable cause or supporting evidence and
the negotiation of plea bargains in bad faith, (Complaint at ¶ 186);

(v)  Count VII, alleging a conspiracy among several of the
Defendants to violate Plaintiffs' federal constitutional protection against
seizure without probable cause and their rights to due process and equal
protection by acting in concert to prosecute Plaintiffs without probable
cause or supporting evidence, engage in bad-faith plea negotiations,
fabricate or withhold evidence, and seek the termination of Mrs. Cheolas's
employment with the Defendant City, (Complaint at ¶¶ 196, 198);

(vi)  Count IX, asserting state-law defamation claims arising from,
*inter alia,* statements made by Defendants LaBarge and DeWaele during
the criminal prosecution of Plaintiffs in which they falsely accused
Plaintiffs of illegal or improper activities, (Complaint at ¶ 221);

(vii)  Count X, asserting a state-law claim of malicious prosecution
arising from the initiation of criminal prosecutions against Plaintiffs
through the acts of, *inter alia,* unlawful search and seizure, fabrication or
withholding of evidence, extortion, and presenting false testimony,
(Complaint at ¶ 224);

(viii)  Count XI, asserting a state-law claim of intentional infliction
of emotional distress arising from, *inter alia,* the criminal prosecution of
Plaintiffs by Defendants LaBarge and DeWaele without probable cause and
the offering of plea bargains in bad faith, (Complaint at ¶ 235);

(ix)  Count XIV, asserting a state-law claim of gross negligence

7

against Defendants LaBarge and DeWaele arising from the criminal prosecution of Plaintiffs without probable cause or sufficient evidence to support the charges, (Complaint at ¶ 258); and

(x)  Count XV, asserting a state-law claim of negligence against Defendants LaBarge and DeWaele arising from their alleged breach of a duty to dismiss the criminal charges against Plaintiffs in light of the purported absence of supporting evidence, (Complaint at ¶ 264).

Through the present motion, Defendants LaBarge and DeWaele seek the dismissal of each of these ten claims, arguing that they are entitled to absolute prosecutorial immunity or, in the alternative, qualified immunity.

## III.  <u>ANALYSIS</u>

### A.    The Standards Governing Defendants' Motion

Although Defendants purport to seek an award of summary judgment under Fed. R. Civ. P. 56, the arguments they have presented rest solely upon the allegations of the complaint, and their motion is unaccompanied by any exhibits apart from this initial pleading.  Similarly, while Plaintiffs have attached certain police reports as exhibits to their response to Defendants' motion, they do not identify any relevant factual issues that arise from these materials,[4] but instead offer purely legal arguments why, in their view, the claims against Defendants LaBarge and DeWaele are not subject to dismissal prior to

---

[4]These exhibits are referenced only two times in Plaintiffs' response, and are cited for the proposition that the police reports are internally inconsistent as well as inconsistent with the observations of other witnesses.  (*See* Plaintiffs' Response at 9, 12.)  Yet, there is no need for the Court to consult materials outside the pleadings on this point, as Plaintiffs' underlying complaint is replete with similar allegations of inconsistent and fabricated police reports.  If these allegations are accepted as true, the exhibits accompanying Plaintiffs' response no longer serve any purpose, and the Court has not considered them in resolving Defendants' motion.

the close of discovery.

Under these circumstances, the Court finds that Defendants' motion should be resolved solely upon the pleadings, and by reference to the standards of Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, the Court must accept as true the well-pleaded factual allegations set forth in Plaintiffs' complaint. *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir. 1987); *Westlake v. Lucas,* 537 F.2d 857, 858 (6th Cir. 1976). However, the Court "need not accept as true legal conclusions or unwarranted factual inferences." *Morgan,* 829 F.2d at 12.

In the aftermath of the Supreme Court's recent decision in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S. Ct. 1955 (2007), the Sixth Circuit has explained that a plaintiff's factual allegations, while "assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin American Citizens v. Bredesen,* 500 F.3d 523, 527 (6th Cir. 1987). While this standard remains "decidedly liberal," it nonetheless "require[s] more than bare assertions of legal conclusions." *Bredesen,* 500 F.3d at 527. Rather, "[t]o state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." 500 F.3d at 527.

**B.     Plaintiffs' Complaint Fails to Identify Any Actions Taken by Defendants LaBarge or DeWaele That Lie Outside the Scope of Absolute Prosecutorial Immunity.**

9

As the principal ground for seeking the dismissal of the claims against them, Defendants LaBarge and DeWaele appeal to the absolute immunity conferred upon prosecutors for actions taken within the scope of their core duties of initiating and pursuing criminal prosecutions. In Defendants' view, the complaint in this case is bereft of allegations that their involvement in the investigation and prosecution of Mr. and Mrs. Cheolas exceeded the scope of these core prosecutorial functions. In response, Plaintiffs suggest that they should be permitted to fully explore the conduct of Defendants LaBarge and DeWaele in discovery before the Court rules on the availability of absolute immunity. As explained below, the Court finds that Defendants have the better of the argument on this question.

It is well established that "in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under [42 U.S.C.] § 1983." *Imbler v. Pachtman,* 424 U.S. 409, 431, 96 S. Ct. 984, 995 (1976) (footnote omitted); *see also Spurlock v. Thompson,* 330 F.3d 791, 796-97 (6th Cir. 2003). This immunity extends to all activities that are "intimately associated with the judicial phase of the criminal process," *Imbler,* 424 U.S. at 430, 96 S. Ct. at 995, and thus shields a prosecutor from liability for such alleged misconduct as "the knowing use of false testimony and the suppression of material evidence at [a] criminal trial," *Spurlock,* 330 F.3d at 797. Moreover, absolute prosecutorial immunity is not strictly limited to "the act of initiation itself and to conduct occurring in the courtroom," but encompasses any activities "undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for

10

trial," including "the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial."  *Buckley v. Fitzsimmons,* 509 U.S. 259, 272-73, 113 S. Ct. 2606, 2615 (1993).

Yet, the Supreme Court has emphasized that "the actions of a prosecutor are not absolutely immune merely because they are performed by a prosecutor."  *Buckley,* 509 U.S. at 273, 113 S. Ct. at 2615.  In particular, if a prosecutor "functions as an administrator" or "performs the investigative functions normally performed by a detective or police officer," he or she is protected only by qualified, and not absolute, immunity. 509 U.S. at 273, 113 S. Ct. at 2616 (internal quotation marks and citation omitted).  Thus, for example, a "prosecutor is not entitled to absolute immunity for statements made in an affidavit supporting [an] application for [an] arrest warrant," or for making "out-of-court statements . . . at a press conference."  *Spurlock,* 330 F.3d at 798 (citations omitted).  In distinguishing between those functions which are protected by absolute immunity and those which are not, "the critical inquiry is how closely related is the prosecutor's challenged activity to his *role as an advocate* intimately associated with the judicial phase of the criminal process."  330 F.3d at 798 (internal quotation marks and citation omitted).

Applying these principles here, it is immediately apparent that Defendants LaBarge and DeWaele are entitled to absolute immunity as to at least two of the five federal claims asserted against them.  Specifically, the claims advanced against these Defendants in counts III and VI of the complaint rest solely upon their participation in Plaintiffs' criminal prosecution.  In support of the due process claim asserted in count III,

11

Plaintiffs allege that the Defendant prosecutors "failed to adduce sufficient evidence to bring charges against [them], but nevertheless authorized and prosecuted such charges in knowing and reckless abuse of their prosecutorial discretion."  (Complaint at ¶ 158.) Similarly, in support of the claim in count VI that Defendants LaBarge and DeWaele violated their constitutional rights to due process and a fair trial, Plaintiffs allege that the Defendant prosecutors "continued prosecution of Plaintiffs absent probable cause and evidence supporting allegations, negotiated plea bargains in bad faith, made unlawful plea bargains and initiated and continued prosecution with malice or for a primary purpose other than bringing [Plaintiffs] to justice.'  (*Id.* at ¶ 186.)

The evaluation of the evidence gathered by the police and the decisions to commence and continue a criminal prosecution are functions shielded by absolute prosecutorial immunity.  *See Buckley,* 509 U.S. at 272-73, 113 S. Ct. at 2615; *Spurlock,* 330 F.3d at 797.  In addition, a number of courts have recognized that plea bargaining and comparable activities are intimately associated with the judicial process, and thus are protected by absolute immunity.  *See, e.g., Pfeiffer v. Hartford Fire Insurance Co.,* 929 F.2d 1484, 1492 (10th Cir. 1991) (finding that the defendant state attorneys were absolutely immune from liability for a claim that they threatened to file criminal charges against the plaintiff physician if he did not give up his medical practice); *see also Pinaud v. County of Suffolk,* 52 F.3d 1139, 1149 (2d Cir. 1995); *Davis v. Grusemeyer,* 996 F.2d 617, 629-30 (3d Cir. 1993), *abrogated on other grounds by Rolo v. City Investing Co. Liquidating Trust,* 155 F.3d 644 (3d Cir. 1998); *Taylor v. Kavanagh,* 640 F.2d 450, 453-

12

54 (2d Cir. 1981). The Sixth Circuit has reached this same conclusion, albeit in an

unpublished decision:

> By accepting a plea bargain, the defendant admits guilt and in exchange is usually offered a less severe sentence. The plea bargain takes the place of a trial. Conduct associated with plea bargaining is clearly not administrative or investigative but rather is so intimately associated with the prosecutor's role as an advocate of the State in the judicial process, that the prosecutor is absolutely immune in his individual capacity from § 1983 liability for such actions.

*Cole v. Smith,* No. 97-5964, 1999 WL 685940, at *2 (6th Cir. Aug. 24, 1999).

To be sure, in both count III and count VI of the complaint, Plaintiffs allege that

Defendants LaBarge and DeWaele acted "in an investigative capacity" when they

engaged in the conduct giving rise to these claims. (Complaint at ¶¶ 159, 187.) Yet, this

is a legal conclusion, unsupported by any allegations that purport to identify any action

taken by either of the Defendant prosecutors that could properly be characterized as

investigative in nature. To the contrary, the actions identified in these counts of

complaint — the assessment of the sufficiency of the evidence, the decision to bring and

prosecute charges, and the negotiation of plea bargains — are recognized in the case law

as prosecutorial functions that are shielded by absolute immunity. Accordingly,

Plaintiffs' allegations fail to establish any basis for the imposition of liability under

counts III or VI of the complaint.

In their response to Defendants' motion, however, Plaintiffs insist that discovery is

needed in order to ascertain where the activities of Defendants LaBarge and DeWaele lie

in the "frequently murky dividing line between 'investigative' acts and acts performed as

13

an 'advocate.'" (Plaintiffs' Response Br. at 12.)[5]  Yet, such discovery is warranted only if

it promises to provide evidence in support of **_allegations_** of investigative activities.  Here,

Plaintiffs have failed to even **_allege_** that either Defendant LaBarge or Defendant DeWaele

engaged in any conduct that could be characterized as investigative.  Nor have they

sought leave to amend their complaint to include such allegations.  No amount of

discovery can overcome such a deficiency in pleading.[6]  Because the actions of

Defendants LaBarge and DeWaele as alleged in counts III and VI lie comfortably on the

"advocate" side of the line, no matter how "murky" this line might be, the Court

_____

[5]As noted earlier, Plaintiffs also have filed a separate motion seeking this same relief under Fed. R. Civ. P. 56(f).  On one hand, Plaintiffs' reliance on Rule 56 seemingly is misplaced, where Defendants' motion rests solely on the allegations of the complaint and is unaccompanied by any affidavits or other exhibits.  Under these circumstances, there would appear to be no need to conduct discovery in order to identify issues of fact, where Defendants' motion is not premised on the absence of issues of fact, but rather on the absence of allegations that could overcome their entitlement to absolute immunity.  On the other hand, Plaintiffs perhaps should not be faulted for their appeal to Rule 56(f), where Defendants' motion is captioned as seeking summary judgment, and where they argue in their accompanying brief that this motion should be resolved under the standards of Rule 56.  As explained above, despite the parties' shared misunderstanding on this point, the Court finds that Defendants' motion should be resolved under the standards of Rule 12(b)(6).

[6]For what it is worth, the parties have engaged in a complete course of discovery while Defendants' motion remained pending.  Plaintiffs have never sought to supplement their response to Defendants' motion to identify any evidence of investigative acts undertaken by Defendants LaBarge or DeWaele.  Neither has the Court uncovered any such evidence in its review of the materials produced in connection with the various summary judgment motions filed by the parties.  While there is some limited evidence of meetings and telephone conversations between Defendant LaBarge and the police officers and detectives who conducted the investigation into the April 24, 2004 incident at Plaintiffs' home, this evidence does not suggest that Defendant LaBarge participated in or directed the investigation, or that he otherwise engaged in "investigative" conduct that would overcome his appeal to absolute immunity.  _See Vakilian v. Shaw_, No. 07-1576, 2008 WL 4997503, at *7 (6th Cir. Nov. 24, 2008) (holding that the defendant prosecutor did not forfeit his absolute immunity by "staying informed of the investigation's progress").

14

concludes that these counts must be dismissed.

Next, while the allegations in support of count II sweep far more broadly, the Court nonetheless finds that Defendants LaBarge and DeWaele are absolutely immune from liability for the substantive due process violation asserted in this count of the complaint.  In support of this "catch-all" claim, Plaintiffs allege that the Defendant City, its police department, the City manager, a number of City police officers and employees, and the Defendant prosecutors "fabricated evidence, made false statements at trial, [and] initiated and continually prosecuted [Plaintiffs] absent probable cause and absent evidence to support such charges."  (Complaint at ¶ 146.)  No effort is made in this count of the complaint to identify with greater specificity which of the various Defendants engaged in which of the offending activities.  Earlier in the complaint, however, Plaintiffs advance a number of "common allegations" as to each separate subgroup of Defendants, including the police officers, (*see id.* at ¶¶ 100-14), the detectives, (*see id.* at ¶¶ 115-18), the paramedics, (*see id.* at ¶ 119-23), and the City attorneys, Defendants LaBarge and DeWaele, (*see id.* at ¶¶ 124-27).  Notably, in the portion of the complaint addressing the actions of the Defendant attorneys, Plaintiffs allege that these individuals "continued to prosecute Mrs. Cheolas absent probable cause and any sufficient evidence to support charges," and that their "persistent plea bargains requesting Mrs. Cheolas' resignation from her job with the City of Harper Woods were unwarranted."  (*Id.* at ¶¶ 125-26.)

Read against this backdrop of the complaint as a whole, count II cannot fairly be construed as identifying any actions taken by Defendants LaBarge and DeWaele that

15

might lie outside the ambit of their absolute prosecutorial immunity.  Although the allegations in support of count II make reference to activities — most notably, the fabrication of evidence — that are more investigative in nature, and therefore may not be shielded by absolute immunity, *see Buckley,* 509 U.S. at 272-76, 113 S. Ct. at 2615-17, nothing in the complaint forges (or even alludes to) a link between these sorts of activities and the Defendant prosecutors.  Rather, as to these Defendants, Plaintiffs allege only that they brought criminal charges and continued to prosecute despite the lack of probable cause or sufficient evidence, and that they plea bargained in bad faith.  As explained earlier, the Defendant prosecutors enjoy absolute immunity from liability for any federal § 1983 claims arising from such activities.  It follows that Count II must be dismissed as to Defendants LaBarge and DeWaele.[7]

In the remaining two federal claims directed at these two Defendants, Plaintiffs allege that Defendants LaBarge and DeWaele conspired along with several other

---

[7]In any event, the Court doubts that Plaintiffs could state a viable substantive due process claim against these Defendants based on a theory of malicious prosecution.  As the Sixth Circuit recently explained, while the contours of a federal § 1983 claim of malicious prosecution "remain uncertain," such a claim generally is viewed as "arising under the Fourth Amendment," as opposed to being analyzed under the "shocks the conscience" standard that governs Fourteenth Amendment substantive due process claims.  *Fox v. DeSoto,* 489 F.3d 227, 237 (6th Cir. 2007); *see also Gregory v. City of Louisville,* 444 F.3d 725, 747-50 (6th Cir. 2006).  Because Plaintiffs have asserted more direct claims of malicious prosecution (based upon more specific constitutional guarantees) in counts III and VI of the complaint, their substantive due process claim in count II seemingly adds nothing to their effort to impose § 1983 liability on Defendants LaBarge and DeWaele.  *See Albright v. Oliver,* 510 U.S. 266, 273, 114 S. Ct. 807, 813 (1994) ("Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." (internal quotation marks and citation omitted)).

Defendants to violate Plaintiffs' federal constitutional rights to substantive and procedural due process (count IV), and to violate their federal constitutional rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution (count VII). According to the complaint, however, the underlying conduct in furtherance of these alleged conspiracies — the fabrication of evidence, the prosecution of Plaintiffs without probable cause or sufficient evidence, and the negotiation of plea bargains in bad faith, (*see* Complaint at ¶¶ 167-69, 171, 196, 201) — is precisely the same as that which gives rise to the other federal claims advanced by Plaintiffs in this case. Moreover, there is nothing at all unique about the allegations in support of these conspiracy claims — they do not suggest, in particular, that Defendants LaBarge or DeWaele engaged in any activities apart from those identified elsewhere in the complaint in support of the other federal claims against these individuals. The Court already has determined that these activities were "intimately associated with the judicial phase of the criminal process," *Imbler,* 424 U.S. at 430, 96 S. Ct. at 995, and thus are shielded by absolute immunity. It follows that Plaintiffs' conspiracy claims against Defendants LaBarge and DeWaele fare no better than their substantive § 1983 claims. *See Pinaud,* 52 F.3d at 1148-49 (explaining that the plaintiff's "formulation of his claims in terms of an 'out-of-court conspiracy' does nothing to undercut" the defendant prosecutors' entitlement to absolute immunity).

Turning next to the state-law claims asserted against Defendants LaBarge and

DeWaele,[8] Plaintiffs allege in count X of the complaint that these individuals and several other Defendants maliciously commenced criminal proceedings against Plaintiffs for an improper purpose and without probable cause. Similarly, in support of their state-law claim of intentional infliction of emotional distress in count XI, Plaintiffs allege that Defendants LaBarge and DeWaele engaged in the improper activities of initiating and continuing criminal prosecutions without probable cause, failure to make a reasonable assessment of the evidence against Plaintiffs and the exculpatory evidence, and plea bargaining in bad faith. In short, these two state-law claims rest upon the same alleged conduct that gives rise to Plaintiffs' federal claims against the Defendant prosecutors.

As Defendants correctly observe, the Michigan courts have recognized a common-law prosecutorial immunity that closely tracks the absolute § 1983 immunity conferred by the Supreme Court in *Imbler*. *See Payton v. Wayne County,* 137 Mich. App. 361, 357 N.W.2d 700, 704-05 (1984); *Davis v. Eddie,* 130 Mich. App. 284, 343 N.W.2d 11, 13-14 (1983). Although these decisions pre-date the comprehensive revision of Michigan's governmental immunity statute in 1986, *see* Mich. Comp. Laws § 691.1407, the Michigan courts have recognized the continued existence of common-law prosecutorial immunity as a complement to this statutory grant of immunity. *See Fifield v. City of Lansing,* No. 221755, 2001 WL 1134607, at *3 (Mich. Ct. App. Sept. 21, 2001); *see also McCollum v.*

_____

[8]As noted earlier, the complaint includes five state-law claims to which Defendants LaBarge and DeWaele are named as parties. In a submission filed with the Court after their response to the present motion, however, Plaintiffs have conceded that their state-law claims of defamation, negligence, and gross negligence are not viable. Thus, the Court need only address the remaining two state-law claims.

*Bahl,* No. 08-CV-96, 2008 WL 5396248, at *5 (W.D. Mich. Dec. 18, 2008) (surveying the relevant case law and concluding that "the Michigan governmental tort liability act did not displace common law prosecutorial immunity").  Moreover, as the highest-ranking official in the Harper Woods City Attorney's office, Defendant LaBarge also is entitled to statutory immunity, where the activities he allegedly engaged in plainly were within the scope of his executive authority as City Attorney.  *See* Mich. Comp. Laws § 691.1407(5); *see also Bischoff v. Calhoun County Prosecutor,* 173 Mich. App. 802, 434 N.W.2d 249, 251-53 (1988); *Puertas v. Gorcyca,* No. 262783, 2006 WL 1156365, at *1 (May 2, 2006); *Salmon v. Wilkerson,* No. 229173, 2002 WL 1603180, at *2 (July 19, 2002).  Accordingly, Defendants LaBarge and DeWaele are immune from liability under Plaintiffs' state-law claims of malicious prosecution and intentional infliction of emotional distress.[9]

## IV.  CONCLUSION

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendants' motion for summary judgment on Plaintiffs' claims against Defendants Russell LaBarge and Sharon

_____

[9]In light of the Court's determination that all of the claims against Defendants LaBarge and DeWaele are subject to dismissal on immunity grounds, the Court necessarily must deny Plaintiffs' motion for a continuance under Fed. R. Civ. P. 56(f)(2).  In particular, no amount of discovery would alter the legal conclusion that the activities allegedly engaged in by these two Defendants were closely related to the judicial phase of the criminal process, and thus are functions protected by absolute immunity.  It also follows that the Court must sustain Defendants' objection to the Magistrate Judge's order compelling the depositions of Defendants LaBarge and DeWaele on the issue of absolute immunity, where Plaintiffs' complaint does not identify any actions taken by these Defendants that would lie beyond the scope of this immunity.

19

DeWaele (docket #38) is GRANTED.  IT IS FURTHER ORDERED that Plaintiffs'

motion for continuance (docket #44) is DENIED.  Finally, IT IS FURTHER ORDERED

that Defendants' objection to the Magistrate Judge's February 8, 2007 order compelling

the depositions of Defendants LaBarge and DeWaele (docket #58) is SUSTAINED.

                       s/Gerald E. Rosen
                       Chief Judge, United States District Court

Dated: February 13, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 13, 2009, by electronic and/or ordinary mail.

                       s/LaShawn R. Saulsberry
                       Case Manager